IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION

**K & H DEVELOPMENT GROUP, INC,**
**a Florida Corporation**
            **Plaintiff,**

**vs.**                                                      **No.   3:06cv494/MD**

**KEITH HOWARD; THE HOWARD**
**COMPANY OF THE SOUTHEAST, INC.,**
**a Florida Corporation; INTRAWEST**
**SANDESTIN COMPANY, L.L.C., a**
**Foreign Corporation; INTRAWEST**
**RESORTS, a Foreign Corporation;**
**SANDESTIN OWNERS ASSOCIATION, INC.,**
**a Florida Non-Profit Corporation; and**
**WALTON COUNTY, FLORIDA, a**
**subdivision of the State of Florida,**
            **Defendants.**

_____

## ORDER ON MOTIONS TO STRIKE AND EXCLUDE EVIDENCE

Before the court are the motions to strike and exclude evidence filed by defendant Intrawest Sandestin Company, L.L.C. ("Intrawest") (doc. 407) and joined by defendant Walton County (doc. 425), defendants Keith Howard and the Howard Company of the Southwest, Inc., ("the Howard Defendants") (doc. 426), and defendant Sandestin Owners Association ("SOA") (doc. 427).   Plaintiff has responded in opposition to the motions.  (Doc. 424, 430, 431, 432).  Because the parties have joined in and adopted each other's arguments, the court enters a single order.

**Case history and procedural background**

Plaintiff K&H Development Group, Inc., a Florida corporation ("K&H") filed its original Verified Complaint (Doc. 1) against Keith Howard and The Howard Company of the Southeast, Inc. (collectively, the "Howard Defendants"); Intrawest Sandestin Company, L.L.C., a foreign corporation and Intrawest Resorts, a foreign corporation (collectively "Intrawest"); Sandestin Owners Association, Inc., a Florida Non-Profit Corporation ("Sandestin"); and Walton County, Florida, a subdivision of the State of Florida, ("Walton County" or the "County").   Plaintiff alleged generally that, through the collective and individual efforts of the defendants, it had been prevented from developing a 1.453 acre piece of property it owned on the north side of U.S. Highway 98 within the Sandestin Development of Regional Impact (hereafter, "DRI"). After initial responses to that Complaint were filed, K&H sought, and was granted, leave to file a Verified Amended Complaint (Doc. 48, 49, 58).

The eight-count verified amended complaint contained the following claims:

Count I–Tortious interference with business relationship against the Howard defendants

Count II–Equal protection violation under 42 U.S.C. § 1983 against all defendants

Count III– Substantive Due process violation under 42 U.S.C. § 1983 against all defendants

Count IV– Equitable Estoppel against Walton County

Count V–Conversion against the Howard defendants

Count VI–Fraudulent Misrepresentation against the Howard defendants, Sandestin and Intrawest

Count VII–Inverse condemnation under Article X, § 6(a) of the Florida Constitution against Walton County

Count VIII–Civil Theft against the Howard defendants.

(Doc. 49).

In response to the Verified Amended Complaint, Walton County and the Howard Group Defendants answered (Doc. 64, 69), while the remaining defendants moved to dismiss (Doc. 61, 62). The Howard Defendants also filed a counterclaim against K&H, adding Howard affiliated companies Baytowne Commercial Joint Venture Partners, Baytowne Commercial Joint Venture Partners II, Baytowne Office Plaza Joint Venture Partners and Baytowne Restaurant Sites, Inc., as Counter-Plaintiffs (Doc. 69). Upon denial of the motions to dismiss (Doc. 128), Intrawest and the SOA also answered the Verified Amended Complaint (Doc. 129, 130, 132).

The defendants filed motions for summary judgment (doc. 181, 185, 187 & 191) which were pending when, on July 8, 2008, the plaintiff filed a supplemental pleading to join Bla-Lock Development Group, Inc. ("Bla-Lock") as a plaintiff in this action. (Doc. 350).  The Supplemental Pleading addressed the fact that the K&H property had been sold in foreclosure.  Roger Murray, Jr. as plaintiff placed the high bid[1] for the property and assigned his bid and his rights to Bla-Lock.  (Doc. 350 at 3-4).  Title to the property thus transferred from K&H to Bla-Lock, who submitted an application to Defendant Walton County for approval of a development order for the property. Because defendant Intrawest did not acknowledge that the property had any development rights, Walton County would neither approve nor deny Bla-Lock's application.  (*Id.* at 4).  Plaintiffs sought damages and equitable relief based upon the date of transfer of title, attorney's fees and costs and other relief.  (*Id.* at 5).  No new theories of damages were specifically asserted.

After the supplemental pleading was filed, Intrawest filed a second motion for summary judgment or to dismiss for lack of subject matter jurisdiction and statement of facts (doc. 355 & 356).  After reviewing that motion, this court denied all pending summary judgment motions without prejudice and directed the parties

---

[1]The amount of the bid was not stated in the Supplemental Pleading, although it was in excess of $2,600,000.00, which was the final bid placed by Keith Howard.  (Doc. 350 at 3).

to file superseding motions for summary judgment based on the newly discovered facts pertaining to the foreclosure sale of the subject property.  (Doc. 367).  Each of the parties has done so, (doc. 382, 385, 390 & 394), and plaintiffs have responded. (Doc.  404, 405, 408, 409, 414, 415, 416 & 417).

Defendant Intrawest argued in its superseding motion for summary judgment, among other things, that judgment should be entered in its favor because K&H and Bla-Lock  have no damages in light of the fact that the K&H property was sold at the foreclosure sale for $2,625,000, a sum well in excess of K&H's alleged damages for "lost" development rights as calculated by its own damages expert, appraiser Walter H.  Humphrey.

_____ K&H served the expert report of appraiser Walter H. Humphrey, its damages expert, on or about August 10, 2007.  (Doc. 227-3; appendix 46).  The purpose of the appraisal as described on the Summary Appraisal Report itself was:

> to develop an opinion of the diminution in market value related to the entitlements for commercial improvements of 15,628 square feet (SF) compared to the absence of any future potential for development or structural improvement.

(Doc. 227-3 at 8).  The appraisal analysis of the property "as vacant" assumed alternatively that the land had no future potential for development or structural improvement and that the land had entitlements to construct 15,628 SF of commercial office and retail improvements.  (*Id.*).  Mr. Humphrey opined that the market value of the subject property as of November 14, 2002 with development options was $1,400,000.  Without any development potential, the property's value was $12,500, yielding a diminution in value (damages) of $1,387,500.  The market value as of September 28, 2006 with development options was $2,000,000 and only $12,500 without any development potential, for a total diminution in value (damages) of $1,987,500.  (*Id.* at 15).  These figures pertaining to the diminution in market value were the only numbers offered with respect to differential valuation of the property with or without development rights.

When defendants deposed Mr. Humphrey on September 19, 2007,[2] he stated that he had been tasked by plaintiff's counsel with developing an opinion of market value and any related dimunition of value in the subject property with or without the potential for commercial development or structural improvements.  (Doc. 355-4 at 5; Deposition of Walter H. Humphrey, page 13, lines 10-24).  Specifically, Humphrey explained he was "asked to prepare an analysis of market value under two separate sets of circumstances on the subject property; one, with a development order; and, two, without; and with the valuation dates of November 14, 2002 and September 28, 2006."  (Doc. 249-2 at 7, Humphrey Depo. at 9, I. 6-10).  Humphrey was then asked whether he had any opinions that were not reflected in his written report, and he indicated "nothing of significance."   (Doc. 249-2 at 25, Humphrey Depo. at 74). Counsel then asked "what about something of no significance," to which Humphrey responded that he thought the property "would be a good place for an eagle's nest." (*Id.*)  He further stated that he had completed his assignment, and that he had not been asked to do anything in the future to supplement or modify his assignment. (*Id.* as 25-26, Humphrey Depo. at 74-75).

Mr. Humphrey's report and supporting affidavit were filed four days after the discovery cut-off date, on September 25, 2007.  (Doc. 227-3).

Plaintiffs appended to their response to Intrawest's motion what Intrawest describes as "an unsworn, unsubstantiated, never-before-disclosed letter from Mr. Humphrey dated September 29, 2008, which the plaintiffs euphemistically called an 'addendum' to his earlier report."  (Doc. 407 at 6).  Humphrey states in the body of the letter that it "appends" the previously prepared appraisal report.  In the letter, Mr. Humphrey addressed unspecified "questions" posited to him by plaintiffs' counsel, and discussed improved commercial sales in the area and rental/lease value of improved land.  (Doc. 404-11).  He assumed a 10,000 square foot ("SF") building or

---

[2] Pursuant to the court's Order Adopting Discovery Plan, the deadline for all discovery in the case, including expert depositions and discovery, was September 21, 2007. (Doc. 100).

"land condo" on the land and stated that such would have sold for $5,000,000.  With respect to rental income, Humphrey calculated that the owner of a 10,000 SF building would gross "$240,000 to $260,000 per year with minimal expenses for vacancy and credit losses, management, legal, accounting and reserves." (Doc. 404-11 at 2).

Defendant Intrawest filed a motion to strike and exclude this evidence, as well as the portions of plaintiff's statement of facts and memorandum of law in which "plaintiffs improperly seeks (sic) to change their damages theory in an effort to avoid summary judgment"  (doc. 407 at 2). The other defendants have joined in this motion. (Doc. 425, 426, 427).

The parties raise two main arguments.  First they argue that the expert's additional opinion was untimely disclosed.   Second, they maintain that through Humphrey's "addendum," plaintiffs are presenting a new theory of damages in an attempt to avoid summary judgment.[3]

1.  <u>Failure to timely disclose</u>

The defendants argue that plaintiffs failed to timely disclose Humphrey's addendum to his report by supplementing their expert disclosures under Fed.R.Civ.P. 26.  (Doc. 426 at 2).  Fed.R.Civ.P. 26(a)(2)(B) requires parties to serve expert disclosures containing "a complete statement of all opinions to be expressed and the basis and reasons therefore . . ."  Parties must supplement disclosures or discovery responses when they learn that a prior response was incomplete or incorrect and the additional or corrective information was not otherwise known to

---

[3]Intrawest also presents a third argument that the addendum is an unsworn and unsubstantiated letter which cannot be relied upon as evidence opposing a motion for summary judgment.  This issue will not be addressed in light of the court's analysis of the other issues. In addition, the court notes that the Humphrey addendum was appended to the plaintiffs' response to statement of facts in support of plaintiffs' response in opposition to defendant Sandestin Owners Association's motion for summary judgment, filed on October 3, 2008.  (Doc. 409-3).  With that response, plaintiffs included an affidavit from Mr. Humphrey dated October 3, 2008, stating that the addendum is "true and accurate" and was prepared based on Humphrey's training, education, and experience and that the results and conclusion contained therein are true and accurate to the best of his ability.

the other parties during the discovery process.  Fed.R.Civ.P. 26(e)(1)(A).  With respect to expert witnesses, the duty to supplement extends both to information included in the report and to information given during the expert's deposition. Fed.R.Civ.P. 26(e)(2).  Such additions or changes must be disclosed by the time the party's pretrial disclosures under Rule 26(a)(3) are due.    (*Id.*)  The Howard defendants  argue that plaintiffs are seeking to skirt the disclosure requirement by characterizing the new opinion as "supplemental."  They argue that because the information providing the basis for Humphrey's opinion was available prior to the missed deadline for service of disclosures, the addendum should be rejected.  They further argue that plaintiffs should not be allowed to use the "supplemental" report to "fix" problems in the initial report, particularly when it differs from the original report and is clearly filed in response to defendants' motions for summary judgment. The Howard defendants concede that some of the prejudice could be cured by allowing the defendants to depose Humphrey on his addendum, but they maintain that this would result in undue additional delay as they would have to obtain expert opinions to rebut his opinion, have the new experts deposed, file new dispositive motions, etc.  (doc. 426 at 4).  Thus, they conclude, the "supplement" should be stricken.

In response, plaintiffs agree that pursuant to Fed.R.Civ.P. 26(e)(2), additions or changes to an expert's report must be disclosed by the time the party's pretrial disclosures under Rule 26(a)(3) are due.  They note that in this case, pursuant to the Amended Report of Parties Planning Meeting of April 25, 2007, Rule 26(a)(3) disclosures were not required until the court entered an order after the completion of discovery setting a pre-trial conference and specifying the parties' comprehensive trial disclosure and preparation requirements. (Doc. 95 at 10).  A pre-trial conference has not been held due to the pending motions for summary judgment, and the court has not entered an order with respect to Fed.R.Civ.P. 26(a)(3) disclosures.

Plaintiffs further state that in addition to delivering a signed copy of the Addendum to Report of Expert Walt Humphrey dated September 29, 2008 to the defendants on that same date, on October 3, 2008, plaintiffs served a Notice of Supplemental Disclosures pursuant to Fed.R.Civ.P. 26, which included an affidavit of Walter Humphrey supporting his Addendum to the report. (Doc. 424 at 5).

It thus appears that the plaintiff's disclosure of Humphrey's supplemental report was not untimely, and this is not a sufficient basis to disregard the addendum and the information contained therein.

### 2.  New theory of damages

Intrawest argues that plaintiffs have never before sought damages for "lost profits, lost rents, lost interest, and costs attributable to the foreclosure sale," (doc. 405 at 15), as they now do, and that plaintiffs should not be allowed to change their damages theory in an effort to avoid summary judgment.  It also argues that plaintiffs should not be allowed "to create [an] issue of fact by an affidavit contradicting [their expert's] prior deposition testimony."  *Radobenko v. Automated Equipment Corp.*, 520 F.2d 540, 544 (9th Cir. 1975).

Defendant Walton County argues that permitting plaintiffs to use the new information contained in Humphrey's September 29, 2008 addendum would be unfair.  (Doc. 425 at 3).  It points to the excerpts of  Humphrey's deposition, cited above, in which Humphrey denied having any opinions of significance that are not reflected in his written report, and stated that his assignment for plaintiffs' counsel was complete and that he had not been asked to do anything in the future to supplement or modify his assignment. (Doc. 249-2 at 25-26, Humphrey Depo. at 74-75).  The County argues that under such circumstances, it would be unfair to allow the Humphrey's "newly prepared opinions" to stand.  It asserts that permitting plaintiffs to pursue their additional theory of damages, which theory was disclosed only after the close of discovery and after the expert rendering the opinion has

assured that no further opinion would be forthcoming, would be prejudicial to the defendants.

Plaintiffs admit that in Humphrey's original report and during his 2007 deposition, no opinions were stated, no testimony given and no questions were asked by the defendants concerning the fair market value of the K&H property as developed or leased.  (Doc. 424 at 5).  However, they assert, the report and deposition addressed only one aspect of plaintiffs' damages.  Plaintiffs assert that the new information illustrates the "ongoing damages suffered as a result of the defendants' continuing unconstitutional acts and the values of the property as developed." (Doc. 424 at 8).

Plaintiffs' argument about the procedural impropriety of the defendants' motions is not well-taken.  They posit that a motion to strike is procedurally inappropriate to strike a supplemental damages disclosure, citing *Tambourine Comercio Internacional S.A. v. Solowsky*, 2007 WL 1482020 (S.D.Fla. 2007).  In *Tambourine*, the defendants sought to strike the damages portion of plaintiffs' second supplemental disclosures, arguing that plaintiffs were attempting to indirectly amend their complaint and add new causes of action mere weeks before the discovery cutoff.  In that case, the new damage theory contradicted several earlier damage disclosures.  The district court declined to reach the merits of the substantive issues, noting the procedural impropriety of striking a portion of the parties' discovery at the discovery stage.  2007 WL 1482020 at *1.  It specifically noted, however, the propriety of motions to strike in conjunction with motions for summary judgment, motions in limine or other substantive pretrial motions.  Although *Tambourine* is not binding on this court, plaintiffs' reliance on it is clearly inapposite.  The defendants' motions are not procedurally inappropriate at this juncture.

The court concurs with plaintiffs that the opinions expressed in  Humphrey's addendum do not contradict the opinions expressed in his first report,  as there is

simply no overlap.  He did not abandon or contradict his prior testimony concerning undeveloped property values.  Rather, he did not mention it.  Instead, he provided information concerning developed property values and leased values, subjects which he previously had not addressed.  Thus, this does not provide a basis for excluding the information contained within the addendum to the report.  See *Clark v. Resistoflex Co., A Div. Of Unidynamics Corp.*, 854 F.2d 762, 766 (5th Cir. 1988) (discussing implication of information that supplements, rather than contradicts earlier information, distinguishing *Radobenko v. Automated Equip. Corp.*, 520 F.2d 540, 543-544 (9th Cir. 1975) which discussed proper treatment of inconsistencies in sworn evidence).   This does not end the court's inquiry, however.

Plaintiffs do not explain why, if they are not presenting a "new" theory of damages,  Mr. Humphrey was not previously asked to prepare an opinion with respect to commercial sales and leasing.  He certainly could have done so at the time he prepared his original report, as the addendum reflects that the information upon which his opinion is based is from 2003-2004.  Furthermore, plaintiffs do not rebut defendants' assertion that Humphrey was asked to prepare this "supplemental" opinion only in response to the defendants' assertion in their motions for summary judgment, that the fact that the property was sold for $2,625,000.00 at the foreclosure sale proved that K&H had suffered no damages. The court finds that permitting the plaintiffs to rely on the newly prepared addendum, particularly in light of the expert's assurance under oath that no further opinions would be forthcoming would be unfairly prejudicial.  To the extent plaintiffs suggest that defendants should be faulted for not asking questions on the issues raised in the addendum at Humphrey's deposition, this is disingenuous.  As noted above, counsel specifically inquired into whether Humphrey would have any additional information or opinions, and cannot be faulted for failing to pursue something after having been informed that it does not exist.

Accordingly it is ORDERED:

The defendants' motions to strike and exclude evidence (doc. 407, 425, 426 & 427) are GRANTED for the reasons set forth herein.  In ruling on the pending motions for summary judgment, the court will not consider evidence presented in the expert's "addendum" or arguments made in reliance thereon.

DONE AND ORDERED at Pensacola, Florida this 16th day of January, 2009.

/s/ *Miles Davis*

**MILES DAVIS**
**UNITED STATES MAGISTRATE JUDGE**

*Case No: 3:06cv494/MD*